UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EI DU PONT DE NEMOURS & CO., <br><br> Plaintiff, <br><br> v. <br><br> MACDERMID PRINTING SOLUTIONS LLC., <br><br> Defendants. | Civil Action No. 10-3409 (MLC) <br><br><br> MEMORANDUM OPINION |

**BONGIOVANNI, Magistrate Judge**

Presently before the Court in this patent infringement action is Defendant MacDermid Printing Solutions, LLC's ("MacDermid") motion to stay this matter pending *inter partes* reexamination by the United States Patent and Trademark Office ("PTO") of U.S. Patent No. 6,797,454 B1 (the "'454 patent") [Docket Entry No. 93]. Plaintiff EI Du Pont De Nemours & Co. ("DuPont") opposes MacDermid's motion. While oral argument was requested, the Court considers MacDermid's motion without oral argument pursuant to FED.R.CIV.P. 78. For the reasons set forth more fully below, MacDermid's motion is GRANTED and this civil action shall be stayed pending the PTO's reexamination of the '454 patent.

**I.    Background**

DuPont filed its Complaint against MacDermid on February 12, 2010, alleging infringement of DuPont's '454 patent, titled "Method and Apparatus for Thermal Processing a Photosensitive Element." (Complt. ¶¶ 5-7; Docket Entry No. 1). While the Complaint was initially filed in the District of Connecticut, the case was transferred to this Court, over DuPont's objection, on June 16, 2010. (Ruling on Defendant's Motion to Transfer; Docket Entry No. 39). In determining that New Jersey, rather than Connecticut, is the more convenient forum for

litigating DuPont's infringement claims concerning the '454 patent, the District of Connecticut noted that DuPont had "previously filed patent infringement claims with respect to other patents in the flexography industry in the [D]istrict of New Jersey" and that "[w]hile those claims are not identical to the claims here, the patents at issue in New Jersey involve similar issues of technology to which the New Jersey court has spent considerable time familiarizing itself." (*Id*. at 8). The District of Connecticut's reference to "previously filed patent infringement claims" concerned the claims brought by DuPont against MacDermid in *E.I. Du Pont de Nemours and Company v. MacDermid, Inc., et al.*, District of New Jersey Civil Action No. 06-3383 (MLC) (the "06-3383 Action"). In that case, DuPont alleges infringement of the following two patents: U.S. Patent No. 6,171,758 B1 (the "'758 patent), titled "Dimensionally Stable Flexographic Printing Plates," and U.S. Patent No. 6,773,859 B2 (the "'859 patent"), titled "Process for Making a Flexographic Printing Plate and a Photosensitive Element for Use in the Process." (Complt. in the 06-3383 Action ¶¶ 5-8; 13-16)

After this matter was transferred here, this Court contacted the parties regarding the schedule to be entered in this case. While the Court informed the parties that It would not require the implementation of a discovery schedule designed to put this case on track with the 06-3383 Action, It did expect an abbreviated schedule in light of the information already exchanged between the parties. After the District Court ruled on MacDermid's motion to dismiss, the Court entered such a schedule, which essentially would have had the parties ready to go forward with a *Markman* hearing at the end of July 2012. (*See* 10/13/2011 Order; Docket Entry No. 84). The Court subsequently entered another scheduling order, which set forth the

2

relevant post-*Markman* schedule up until and including the submission of dispositive motions. (*See* 4/16/2012 Order; Docket Entry No. 87].

The parties remained largely on schedule until May 2012, when the parties' opening *Markman* briefs were due. At that juncture, after one joint request for an extension of time to file opening *Markman* briefs was granted (*see* 5/10/2012 Order; Docket Entry No. 88), MacDermid requested additional adjournments, which DuPont opposed. Essentially, MacDermid sought to stay these proceedings pending the PTO's determination of whether to grant MacDermid's request for *inter partes* reexamination of the '454 patent. Though the Court denied that request, the Court did further extend the deadline for filing opening *Markman* briefs. (*See* 5/14/2012 Order; Docket Entry No. 89; 5/15/2012 Order; Docket Entry No. 90). During the adjournment period, the PTO granted MacDermid's request for *inter partes* reexamination of the '454 patent. (PTO *Inter Partes* Reexamination Order of 5/25/2012, attached as Ex. K to the Decl. of Donald A. Robinson, Esq.; Docket Entry No. 93-7). In light of the PTO's decision to grant MacDermid's request for *inter partes* reexamination of the '454 patent, the Court again adjourned the deadline for filing opening *Markman* submissions in order to give MacDermid an opportunity to formally move to stay these proceedings pending the PTO's reexamination of same. (*See* 6/6/2012 Order; Docket Entry No. 92). Aware of DuPont's desire to move this case forward and not wanting to delay these proceedings longer than necessary, the Court set an expedited briefing schedule for MacDermid's motion to stay. (*Id*.) The instant motion followed.

**II.     Analysis**

It is well-established that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of

time and effort for itself, for counsel, and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). As such, the decision to stay a patent case in which the PTO has granted a request to reexamine the patent-in-suit rests within the sound discretion of the district court. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted).

Staying a matter pending a reexamination by the PTO comes with both costs and benefits. Advantages include:

> (1) a review of all prior art presented to a court by the PTO, with its particular expertise; (2) the potential alleviation of numerous discovery problems relating to prior art by PTO examination; (3) the potential dismissal of a civil action should invalidity of a patent by found by the PTO; (4) encouragement to settle based upon the outcome of the PTO reexamination; (5) an admissible record at trial from the PTO proceedings which would reduce the complexity and length of the litigation; (6) a reduction of issues, defenses and evidence during pre-trial conferences; and (7) a reduction of costs for the parties and a court.

*Eberle v. Harris*, Civil Action No. 03-5809 (SRC), 2005 WL 6192865, *2 (D.N.J. Dec. 8, 2005) (citing *GPAC, Inc. v. D.W.W. Enterprises, Inc.*, 144 F.R.D. 60, 63 (D.N.J. 1992)). There are, of course, also disadvantages to the imposition of a stay. For example, "a stay in litigation inevitably causes further delay in an already lengthy process and could potentially harm [the party opposing the stay]. [The opposing party] ha[s] a right to have their day in court, and more and more in American jurisprudence the goal is to have that day sooner rather than later." *Id*. Nevertheless, while courts balance the costs and benefits associated with staying a matter pending reexamination of a patent by the PTO, "courts have noted that granting a stay pending

4

reexamination is favored." *ICI Uniqema, Inc. v. Kobo Products, Inc.*, Civil Action No. 06-2943 (JAP), 2009 WL 4034829, *1 (D.N.J. Nov. 20, 2009).

In determining whether to stay a matter pending reexamination by the PTO, courts have developed a three-part test. Under this test, courts consider "'(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set.'" *Stryker Trauma S.A. v. Synthes (USA)*, Civil Action No. 01-3879 (JLL), 2008 WL 877848, *1 (D.N.J. March 28, 2008) (quoting *Xerox Corp. v. 3Com Corp.*, 69 F.Supp.2d 404, 406 (W.D.N.Y. 1999)). As set forth below, upon consideration of these factors, the Court finds that MacDermid's motion for a stay should be granted.

### A.  Prejudice/Tactical Disadvantage

DuPont argues that the imposition of a stay would be unduly prejudicial and would place it at a clear tactical disadvantage. In this regard, DuPont notes that it and MacDermid directly compete for sales of equipment and supplies used in the flexography printing process. Indeed, DuPont notes that it and MacDermid are the only two competitors in this market. As such, DuPont claims that all of MacDermid's ongoing infringing sales come at a direct cost to DuPont. As a result, DuPont argues that it would be unduly prejudiced if these proceedings were stayed. *(See* DuPont Opp. Br. at 9 (citing *Tesco Corp. v. Weatherford Int'l Inc.*, 722 F.Supp.2d 755, 762 (S.D. Tex. 2010) (noting that where parties are direct competitors, stay would likely prejudice nonmovant and finding that stay would prejudice patent holder's "rights to exclusive use of technology on which it holds a valid patent."); *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 2:06-CV-242, 2008 WL 906315, *1 (E.D. Tex. March 31, 2008) (finding stay would be

5

prejudicial where parties were direct competitors and PTO had provided no guidance on length of time to complete reexamination))). DuPont additionally argues that the prejudice imposed by a stay would be exacerbated by the fact that the reexamination process will likely take approximately five years to complete, resulting in DuPont losing the value of its inherent rights relating to thermal flexographic technology for that entire time period. *Id*. (citing *LG Elects. U.S.A., Inc. v. Whirlpool Corp.*, Civil Action No. 09-5142 (GEB-ES), 2011 WL 487574, *1 (D.N.J. Feb. 7, 2011) (noting that *inter partes* reexamination could take more than five years if parties fully exhaust appeal rights)). DuPont argues that this loss would include the substantial loss of profits, goodwill and market share.

Moreover, DuPont contends that while some amount of delay is a necessary feature of a stay, here a stay would be prejudicial because MacDermid has already unduly delayed in seeking reexamination of the '454 patent. (*Id*. at 10 (citing *Affinity Labs of Texas, LLC v. Nike, Inc.*, No. C 10-5543 CW, 2011 WL 1833122, *2 (N.D. Cal. May 13, 2011)) (denying stay in part because defendant seeking reexamination waited nine months after suit was filed to request reexamination by PTO and defendants, who collectively moved to stay, waited four months after reexamination was requested to file motion to stay). In this regard, DuPont argues that MacDermid had notice of the '454 patent as early as May 2005 but chose to wait six years from DuPont's initial warning concerning the '454 patent and two years after DuPont filed the instant infringement action to seek reexamination of the '454 patent. (*Id*.) Finally, DuPont claims that a stay would place DuPont at a clear tactical disadvantage because "'a significant delay in this litigation may result in evidence becoming more difficult to access as witnesses may become

unavailable and memories fade.'"  (*Id*. at 11 (quoting *Wyeth v. Abbott Labs.*, Civil Action No. 09-4850 (JAP), 2011 WL 380902, *2 (D.N.J. Feb. 1, 2011))).

The Court, however, is not persuaded that DuPont will be unduly prejudiced or placed at a clear tactical disadvantage by the entry of a stay in this matter.  First, as DuPont acknowledges, the delay inherent in the reexamination process is itself insufficient to establish undue prejudice. *Oy Ajat, Ltd. v. Vatech Am., Inc.*, Civil Action NO. 10-4875 (PGS), 2012 WL 1067900, *21 (D.N.J. March 29, 2012); *Brass Smith, LLC v. RPI Indus., Inc.*, Civil No. 09-6344 (NLH/JS), 2010 WL 4444717, *4 (D.N.J. Nov. 1, 2010); *ICI Uniqema*, 2009 WL 4034829, at *2.  As a result, the fact that the reexamination proceedings may result in a delay of many months or, as DuPont contends, close to five years if all appeals are exhausted, does not alone weigh against imposing a stay.[1]

The Court understands that, here, DuPont argues that the delay associated with a stay would be prejudicial because DuPont and MacDermid are direct competitors in the flexographic technology market and, in fact, are the only two competitors in this market.  While there is some support for this proposition as a basis warranting denial of the requested stay (*see APP Pharm., LLC v. Ameridose LLC*, Civil Action No. 10-4109 (JAP), 2011 WL 816622 (D.N.J. March 8, 2011); *Tesco*, 722 F.Supp.2d at 762; *United Pet Group, Inc. v. MiracleCorp Products*, No. 4:12CV00440, 2012 WL 2458539, *3 (E.D. Mo June 27, 2012); *Boston Scientific Corp. v. Cordis Corp.*, 777 F.Supp.2d 783, 789-90 (D.Del. 2011); *Life Tech. Corp. v. Illumina, Inc.*, Civ. No. 09-706, 2010 WL 2348737, *3 (D.Del. June 7, 2010); *02 Micro Int'l Ltd. v. Beyond*

---

[1]The Court is aware that the PTO is required by statute to conduct *inter partes* reexamination proceedings with "special dispatch."  35 U.S.C. §314(c).  The Court, however, also understands that the proceedings will likely take several months if not years to complete.

*Innovation Tech. Co., Ltd.*, No. 2-040CV-32, 2008 WL 4809093, *1 (E.D. Tex. Oct. 29, 2008); *Cooper Techs.*, 2008 WL 906315, at *1), the Court is unconvinced that MacDermid's status as a direct competitor will result in undue prejudice to DuPont if this matter is stayed. While the Court appreciates DuPont's concern that MacDermid will continue to sell its allegedly infringing product during the course of the stay, thereby further eroding DuPont's market share and resulting in substantial loss of profits and goodwill, the Court notes that DuPont did not seek a preliminary injunction in this matter.[2] More importantly, all of DuPont's "legal and equitable remedies will be available when the stay is lifted; a stay does not foreclose Plaintiff from any remedy." *Oy Ajat*, 2012 WL 1067900, at *21. In this regard, this matter is clearly distinguishable from *APP Pharmaceuticals*, the only District of New Jersey case this Court located which found that the parties' status as direct competitors weighed in favor of denying a stay. There, however, in addition to pointing out that the parties were direct competitors, the patent-holder also argued that, in light of the fact that the patents subject to reexamination were due to expire in under three years, there was the possibility that a stay would eliminate the opportunity for the patent-holder to obtain injunctive relief. *APP Pharm.*, 2011 WL 816622. at *2. DuPont has not raised any such argument here. Under these circumstances, the Court finds that despite DuPont and MacDermid's status as direct competitors, the imposition of a stay will not unduly prejudice DuPont.

---

[2]The Court also notes that DuPont twice sought a preliminary injunction in the 06-3383 Action, but its requests for same were denied. (*See* 08/13/2007 Memorandum Opinion and Order; Docket Entry Nos. 114 & 115; 11/19/2008 Memorandum Opinion and Order; Docket Entry Nos. 192 & 193).

Further, the Court disagrees with DuPont's contention that a stay would be prejudicial to DuPont because MacDermid has already unduly delayed in seeking reexamination of the '454 patent. While DuPont takes issue with the fact that MacDermid had notice of the '454 patent as early as May 2005 but chose to wait six years from DuPont's initial warning that MacDermid was infringing the '454 patent and two years after DuPont filed suit in this matter to seek reexamination, the Court finds that MacDermid did not unduly delay in seeking reexamination of the '454 patent. In this regard, the Court certainly does not fault MacDermid for failing to take any action with respect to the '454 patent prior to DuPont's initiation of litigation. Indeed, given DuPont's concerns over lost profits, goodwill and market share, the Court wonders why DuPont did not file an infringement suit sooner. Delay is a two way street and the Court will not hold MacDermid responsible for failing to act when Dupont is at least equally responsible. As a result the Court finds that a stay will not be unduly prejudicial to DuPont in light of MacDermid's purported undue delay.

In addition, the Court finds that a stay will not place DuPont at a clear tactical disadvantage. While it is true that "'a significant delay" in any litigation "may result in evidence becoming more difficult to access as witnesses may become unavailable and memories fade.'" (DuPont Opp. Br. at 11 (quoting *Wyeth*, 2011 WL 380902, at *2)), DuPont has put forth no evidence to support a conclusion that this is particularly likely here. Instead, the Court simply has DuPont's contention that this may happen. The Court finds DuPont's conclusory statement on this point insufficient and remains unpersuaded that a stay will put DuPont at a clear tactical disadvantage in this litigation.

9

### B. Simplification of Issues and Trial

DuPont argues that staying this matter will not simplify the disputed issues presented in this litigation. In this regard, DuPont notes that the following claims of the '454 patent have been confirmed by the PTO: claims 2, 3, 4, 9, 10, 11 and 15. As a result, regardless of the PTO's determination with respect to the other claims of the '454 patent, DuPont argues that the parties' disputes concerning the infringement, invalidity and enforceability of the aforementioned claims will have to be decided by the Court. As such, DuPont argues a stay will not simplify this case. (*Id*. at 11-12 (citing *APP Pharm.*, 2011 WL 816622, at *2 (denying motion to stay in part because reexamination would not resolve case in its entirety since one of the patents at issue was not subject to reexamination); *Esco Corp. v. Berkeley Forge & Tool, Inc.*, No. C 09-1635 SBA, 2009 WL 3078463, *3 (N.D. Cal. Sept. 28, 2009) (finding this factor weighed against stay where Court remained unconvinced that reexamination would resolve all claims in dispute)).

Similarly, DuPont argues that a stay will not simplify the issues in dispute because even after the PTO completes its reexamination of the '454 patent other issues will exist for the Court's determination. DuPont contends this is true because the PTO's review in reexamination proceedings is limited to alleged prior art and publications. It does not include other evidence of invalidity such as indefiniteness under 35 U.S.C. § 112. As a result, DuPont argues that only this Court can provide a complete resolution to all issues raised in this litigation. (*See Id*. at 13).

Likewise, DuPont argues that simplification of issues and trial is unlikely because the claims of the '454 patent confirmed by the PTO implicate the claims that have been preliminarily rejected. In this regard, DuPont argues that the confirmed claims are dependent claims, which

10

include the limitations of other claims. For example, claim 2 of the '454 patent, which was confirmed by the PTO, depends from claim 1, which was preliminarily rejected by the PTO. Given the dependent nature of claim 2, regardless of whether claim 1 is ultimately rejected, DuPont must nevertheless establish the limitations of both claim 1 and claim 2. As a result, DuPont argues that a stay will not simplify the issues present in this matter because, even if claims that have been preliminarily rejected are in fact cancelled or amended, said claims will remain in issue given the dependent nature of the confirmed claims. In other words, DuPont contends that even if certain claims are ultimately rejected by the PTO, such claims will survive reexamination because they will be incorporated into the confirmed dependent claims. (*See Id*. at 13-14).

Dupont additionally argues that simplification of the issues and trial is unlikely because there is actually little chance that the reexamination proceedings will result in the invalidation of any claims of the '454 patent. In this regard, DuPont notes that the PTO's preliminary decision was made without any input from DuPont and that it has yet had the opportunity to provide counterarguments to those raised by MacDermid. DuPont argues that once it has had the opportunity to respond, all claims of the '454 patent will likely be confirmed. DuPont argues that this is particularly true in light of the "unreasonably broad claim interpretation" MacDermid proffered to the PTO. (*Id*. at 14). Given the likelihood that many if not all of the rejected claims will be confirmed, DuPont argues that a stay will not simplify issues in this matter.

Further, DuPont claims that to the extent reexamination may simplify the issues in dispute, that simplification has already occurred through the PTO's initial confirmation and rejection of certain claims in the '454 patent. (*Id*. at 12) (citing *Stryker Corp. v. Monster Media,*

11

*Inc.*, No. 1:09-CV-1142, 2010 WL 2026692, *2 (W.D. Mich. May 20, 2010) (finding that PTO had already simplified issues through initial rejection and confirmation of claims)).

Contrary to DuPont's arguments, the Court finds that a stay will likely simplify this issues in dispute and the trial of this matter. The Court finds that simplification may occur even where, as here, it appears unlikely that all of the claims of the patent subject to reexamination will be rejected. Any "[c]laims that may be rejected during the reexamination will not need to be litigated and, further, it is possible that any claims surviving reexamination may be amended." *ICI Uniqema*, 2009 WL 4034829, at *2. As such, "[a] stay would prevent resources from being expended on invalid or amended claims." *Id*. In addition, while acknowledging that the PTO's initial rejection of 12 claims of the '454 patent is preliminary and non-final in nature, the Court gives very little weight to DuPont's argument that it is unlikely that the reexamination proceedings will result in the invalidation of any claims. This argument is entirely speculative in nature.

Further, the Court finds that the PTO's reexamination of the '454 patent will be beneficial notwithstanding the dependent nature of the claims that have been preliminarily confirmed. In this regard, the Court finds that the fact that the preliminarily confirmed claims depend on claims preliminarily rejected by the Court does not significantly diminish the likelihood that the reexamination proceedings will simplify the issues in this case. Even if DuPont has to establish the limitations of rejected claims in order to establish claims ultimately confirmed by the PTO which depend on the rejected claims, simplification will occur in that the Court will not have to spend resources determining whether the rejected claims are invalid. More importantly, as other courts have recognized, the reexamination process has benefits beyond the "'simplification of

litigation that might result from the cancellation, clarification, or limitation of claims[.]'" *Id*. (quoting *Ethicon*, 849 F.2d at 1428). Indeed, "even if the reexamination d[oes] not lead to claim amendment or cancellation, it could still provide valuable analysis to the district court." *Id*. (quoting *Ethicon*, 849 F.2d at 1428). Consequently, the Court finds that this factor weighs in favor of granting a stay.

### C. Stage of Litigation

DuPont contends that the parties have spent significant resources litigating this matter and that the stage of this litigation favors denying MacDermid's request for a stay. (*Id*. at 15 (citing *Tesco Corp.*, 722 F. Supp. 2d at 764)). DuPont notes that the parties have not only narrowed the scope of discovery, but have also "exchanged their respective claim constructions, infringement and invalidity contentions and their responses to those contentions, and filed a joint claim construction statement." (*Id*.) Further, DuPont notes that because the parties' opening *Markman* briefs were due to be filed in May, DuPont has also already expended significant resources drafting same and, indeed, its brief is nearly complete.

In addition, DuPont argues that the goal was to have this matter tried with or closely following the trial in the 06-3383 Action because the patents-at-issue in that matter include products sold or used with products covered by the claims of the '454 patent. In fact, DuPont points out that issues directly related to the '454 patent have been raised in the 06-3383 Action where MacDermid has asserted antitrust allegations against DuPont based on DuPont's assertion of the '454 patent against Corton Corporation, a company with which MacDermid had entered into a joint development agreement and manufacturing agreement with respect to thermal processing technology. As such, DuPont argues that it would promote judicial economy to have

13

the two matters tried close in proximity, which would occur if this matter is not stayed. Given the amount of resources already invested in this litigation, coupled with the substantial judicial economy that would result from this matter being tried with or closely following the 06-3383 Action, DuPont claims that this matter should not be stayed. (*Id*. at 16 (citing *Power Integrations Inc. v. Fairchild Semiconductor Int'l Inc.*, Civ. No. 08-309-JFF-LPS, 2008 WL 5335400, *2 (D.Del. Dec. 19, 2008) (denying stay, even though discovery was in early stages and no trial date had been set, in part because of lengthy and extensive history of litigation between parties related to infringement and invalidity issues in dispute)).

      Here the Court finds that the stage of these proceedings favors granting a stay in this matter. While the Court has invested significant resources managing the parties' litigations concerning their thermal flexographic technology and DuPont's patents related to same, the Court finds that this litigation is still in its relatively early stages. Neither fact nor expert discovery is complete, a trial date has not been set and a *Markman* decision has not been rendered. Indeed, though initially scheduled to have been completed, in light of MacDermid's request for a stay, *Markman* briefs have not been served. While the Court and the parties' investment in this litigation as well as the 06-3383 Action weigh against the imposition of a stay, the relatively early stage of this particular litigation favors granting one. On balance, when these considerations are weighed, the Court finds that they slightly favor granting a stay.

### III.    Conclusion

      For the reasons state above, having weighed the three factors delineated above and having balanced the costs and benefits associated with staying this matter, the Court finds that a stay

pending the PTO's *inter partes* reexamination of the '454 patent is warranted.  As a result,

MacDermid's motion is GRANTED.  An appropriate order follows.


Dated:  July 23, 2012

                                        s/Tonianne J. Bongiovanni
                                        **HONORABLE TONIANNE J. BONGIOVANNI**
                                        **UNITED STATES MAGISTRATE JUDGE**